Next case is 16-2113, Amphastar Pharmaceuticals, Inc, et al. v. Momenta Pharmaceuticals, Inc I'd like to talk principally about the North Pennington issues that are addressed in this appeal. The North Pennington issues get addressed in two forms here. Could you speak up a bit more? I'm sorry. The North Pennington issues are arising on two fronts. First, by the way in which Judge Gorton applied North Pennington below, as well as secondarily the way defendants, appellees, are claiming North Pennington applies. And I'd like to address both in seriatim, Your Honors. With respect to the initial issue of Judge Gorton's decision claiming that our complaint should be dismissed on the basis of North Pennington, our complaint alleges deception in front of a standard setting organization, which is a classic antitrust claim. That deception caused the creation and adoption of a standard, a testing standard for the drug enoxaparin. People refer to it as Method 207. Method 207 is a testing standard, and once the standard setting organization adopted it as the official test, it was then adopted by the Food and Drug Administration and required everyone who wants to rely upon it to show that it meets the standards. Well, Judge, so we brought that antitrust claim. Judge Gorton saw the FDA's adoption of the standard as the triggering event that created North Pennington immunity and then dismissed our antitrust claims and said we could not recover damages for that. We think that was an error, Your Honor, because nothing in our complaint set forth facts or alleged that the Food and Drug Administration had been petitioned by the defendants to embrace or adopt Method 207. I understand that, but doesn't your complaint have a different problem? When you go through this complaint, and although you have allegations that refer to the proceedings before the standard setting body to the collaboration agreement, it seems that repeatedly throughout your complaint you link antitrust injury to the lawsuit that led to the injunction. And therefore, I understand why Judge Gorton said in his opinion that you do not, in fact he said if you had done this, it might have been a different case, but you could not link your antitrust injury to the collaboration agreement or the proceedings before the standard setting body. And as I look at your complaint, that seems to be a correct characterization of the complaint. Your Honor, we would respectfully disagree. We think our complaint alleges an antitrust violation and so happens that the triggering event that caused our exclusion from the marketplace was the patent infringement lawsuit that was brought against us. But we think there is an independent basis for bringing the claim and recovering damages on the basis of the wrongful conduct before the standard setting organization. I understood your argument to be, one, Judge Gorton misread your complaint about what you were actually alleging, and I have a somewhat different view than Judge Lopez does on that. But secondly, I thought you were arguing that as a matter of law, his reading of the complaint did not justify the result that he reached because you don't allege that you directly filed a petition with the FDA. Here is a problem, though. We have the FTC brief, which basically says the district court made a fundamental error of law and ought to be reversed. But the FTC brief has a paragraph or two about sort of indirect causation. And you say, well, that really isn't a Norr-Pennington theory, at least not on the facts of this case. But I don't know what to do with that indirect causation because your complaint can certainly be read as indirectly the FDA is caused to adopt the standards through the monkey business before the certification agency. So could you spend some time addressing that? Thank you, Your Honor. The way I would frame this, because there are a lot of moving pieces, not moving pieces, but different ways of perceiving this. With respect to the specific issue of was there petitioning to the Federal Drug Administration seeking adoption of Method 207, the clear answer to that is no. We didn't allege that in our complaint. And the defendants, they bring in judicial notice of a number of material, but they do not claim anywhere that they petitioned the Federal Drug Administration to adopt Method 207. So with respect to Judge Gorton's specific issue of saying that or ruling that saying the FDA is the cause of our injury and that it was government petitioning, we think that was error. There was no government petitioning to the FDA at all in this evidence. Secondly, Your Honor, what the Federal Trade Commission is trying to get at, as are we, is this issue of there is a patent infringement lawsuit, and that is the triggering event that literally excluded us from the marketplace. And the question becomes, does the filing of that lawsuit, does the fact that you have a patent and can bring a patent infringement lawsuit, give you a get-out-of-jail-free card to exclude competitors based upon conduct that you did previously that gave you the market power in the first place? And we think the answer to that, as well as the Federal Trade Commission, when they call it indirect petitioning, or ultimately the result of the case, is no, Your Honor. We believe that, according to Allied 2, you look at petitioning conduct, the nature and context of it, not all conduct is automatically nor penitent protected simply because in the causal link at some point there is government action. You have to look at the nature and context. And in this scenario, where the wrongful, anti-competitive conduct originates in the deception before a private, standard-setting organization, that ultimately creates a standard by which everyone agrees the explicit statements were Method 207 was going to be free, we're all agreeing that you can use it, and we will not try to take any competitive advantage out of the fact that it exists. Counsel, if the lawsuit is the triggering event preceded by various instances of anti-competitive conduct, which is what you allege, does the triggering event, the lawsuit, lose all your penitent immunity? No, that would be too broad a statement, Your Honor. Certainly if we had brought a, because we did not allege that the patent was invalid or that the infringement action was a sham, it maintains nor penitent protection for that purpose. We don't dispute that. The question becomes, does the nor penitent, should nor penitent expand the protection to the unlawful, anti-competitive conduct before the standard-setting organization? And the reason the FTC came in and said the answer is no, the only reason that patent has any relevance is because the defendants engaged in deception before the standard-setting organization to adopt a standard that they said would be unencumbered by any intellectual property. So then to come later and to use the patent lawsuit to expand nor penitent protection to the unlawful, anti-competitive conduct is an unwarranted expansion of nor penitent. Maybe this is getting ahead, but just as a practical matter, the damages you allege are basically all of the sales opportunities that you lost during the period in which the preliminary injunction was enforced, if I understand it correctly. So how do you, in a situation like that, how do you sort out the damages that are attributable to the triggering lawsuit and the damages that are attributable to the prior anti-competitive conduct? Or perhaps you don't do that. Well, with that, Your Honor, we think it's all one and the same because we should be able to go forward because there shouldn't be any nor penitent protection with respect to the patent lawsuits and the injunction that arises out of it because of the lost sales that came out of the pendency of the injunction. And there were lost sales after the injunction was lifted. Yes. And so I've been thinking along exactly those lines. Part of your damages case, of course, is the issuance of the injunction against you for at least a limited period of time. But even if they hadn't brought this case, wouldn't you be alleging that you have suffered some damages by being forced to use this method 207 rather than a less costly method? Precisely, Your Honor. But does your complaint allege that? It does because it alleges injuries arising out of the wrongful conduct before the standard setting organization. Suffered in part from damages that flow from the patent action? Well, it's all part and parcel, Your Honor, because we're alleging wrongful conduct. I thought Judge Lynch's question was, do you have damages that flow from the conduct that were not triggered by the filing of the patent action? If the filing of the patent action... I've said yes, and I'm asking you where in the complaint have you said that? Throughout the complaint, Your Honor... Give me a paragraph. I believe, I was thinking of joint appendix pages 173 to 175. I may be wrong, but I believe that's where we allege that the damages continue throughout and are part of the wrongful conduct. I may be citing the wrong pages, Your Honor. But the whole idea was, even though there is this patent infringement action that enjoined us, it should not, at least on grounds of Norr Pennington prohibited us from seeking our lost sales for that time period. With respect to that argument, aren't you in essence asking us to apply premier electrical? That is, Norr Pennington might protect or immunize what would otherwise be anti-competitive conduct for the violation, but with respect to the antitrust injury, it just doesn't apply. That's the basis point, Your Honor. Tell me if I'm missing something. You are not. And we cite Sandy Lane, I'm sorry, Sandy and River coming out of Fifth Circuit, Motorola versus Microsoft, as well as Allied, too. And they all stand for the same proposition, which is if you're going to sue on the basis of damages arising out of some government regulation, you can't recover. But if there's separate, unlawful, anti-competitive conduct that precedes it, you're still able to seek damages arising out of that wrongful conduct. And we think that's the right outcome, as does the FTC, Your Honor, because think of it this way. I'm sorry. Suppose you didn't plead that theory in your complaint. Just hypothetically, you say you did. But suppose you didn't. What should we do then? Remand to allow you to amend? At a minimum, we do think you should do that, Your Honor, because the specific issue right now is Norr Pennington. And for you to adopt the rule that the finding of the patent infringement action should be expanded to protect what you call the monkey business in front of the standard-setting organization is a terrible expansion and unwarranted expansion of the Norr Pennington doctrine. Because all you would be doing, you would not be protecting petitioning. Because there's no allegation of petitioning to the government. All you would be doing is protecting and rewarding anti-competitive conduct by giving them a get-out-of-jail-free card that says, Aha, I have a patent infringement lawsuit. I don't care what I did before. I'm immunized. And the exclusion into the marketplace that I created, the lock-in effect, the patent hold-up effect of standard-setting organization violations, I'm immune from that. So your position is that if there is the monkey business that you allege, that that abrogates any Norr Pennington immunity for the triggering lawsuit itself. That is the position, Your Honor. And we believe we are entitled to seek damages arising out of that wrongful conduct. We were locked into the method 207. We were excluded. We could not use it. They say you were not locked into the 207. That, in fact, it's a preferred method, but the standard-setting organization took pains to point out that alternatives can be proposed. But is that a realistic option? Well, I was going to say that's ultimately a question of fact, of course, beyond the pleadings. But beyond that, we do believe it was mandatory because the standard-setting organization said method 207 is the official standard. Well, that's what a standard is supposed to be. Why should we then go out and pursue yet another standard when the standard-setting organization said this is a good one. It's free. Anyone can use it. It's been tested, and we like it. Why should I then go out and pursue another test? So in that sense, it is mandatory. Certainly doing anything else would not have been economically viable or practical, Your Honor. And if we did, ultimately what that would have done is it would have created a delayed entry into the market that the defendants were trying to gain in the first place because we'd have to go back to the FDA to say we have a different method of testing. They would then say go back to the USP and make sure the USP likes it. That takes months and years. Was this question before the district court was argued? It was not, Your Honor. Okay. They raised it as part of the sufficiency of the complaint. I have another question if I might. In response to Judge Lopez, you said that the filing of the patent infringement case against you was not protected by North Pennington. I thought you had said earlier that that was protected. However, you are still entitled to get damages for the antitrust activity which took place earlier and of which this is the logical combination. To parse that out, Your Honor, our position is that the filing of the patent infringement lawsuit in and of itself is protected by North Pennington because we did not allege that the patent was invalid or it was sham litigation. What we're saying is that the expansion of that North Pennington protection to the unlawful anticompetitive conduct before the standard setting organization is an unwarranted and uncalled for under the law expansion of North Pennington. But you're seeking damages for the effect of the patent litigation. We are seeking damages for the wrongful conduct in front of the standard setting organization that caused us to be locked in and then, yes, Your Honor, technically speaking, the patent infringement lawsuit is the one that technically excluded us from the marketplace. Or you would say the precise limit on damages is simply not an issue to be addressed right now. That may come up in the future in this litigation. That's certainly true, Your Honor. But when I look at, for example, the Motorola v. Microsoft case, that court said there was unlawful conduct before a standard setting organization. Then there was a patent infringement lawsuit brought by Motorola. The court held you can go ahead and seek recovery for the wrongful conduct before the standard setting organization. You can seek whatever damages arose out of it, et cetera. And the case that they rely upon, Apple v. Samsung, it makes the same point. Okay, if you're facing an infringement lawsuit, you can't recover the defense costs because the patent litigation itself was North Pennington protected. But if you suffered a delay of entry into the marketplace, if the license was too much, for example, and you were delayed by entering into the marketplace, you can recover for that. That's not North Pennington protected. Thank you, Your Honors. Good morning, Your Honor. May it please the Court. I'm Robert Frank. I represent Momenta Pharmaceuticals. The first question here is a North Pennington question. Efforts to persuade a public official to take an act, to do an act that's within the power of that public official, are protected by the petitioning provisions of the United States Constitution. As a result, efforts to get a public official to do a public act are protected even if they are motivated. Mr. Frank, I'm sorry to interrupt your flow of argument, but are you going to defend the district court decision on the rationale it used? No, Your Honor, I am not. The point that I will seek to make is that what is alleged in the complaint here is the result of an order by a United States judge, and that is North Pennington protected activity. The damages resulting from that are North Pennington protected, and the allegation of the complaint is as follows. This is paragraph 72 of the complaint, page 177 of the record, and this occurs three separate times in the complaint, at paragraph 78 and paragraph 87. And I quote, As a result of being blocked from selling generic enoxaparin by defendants wrongful enforcement of their patent and TRO and preliminary injunction, plaintiffs suffered antitrust injury. Plaintiffs suffered numerous and significant damages, including but not limited to damaged reputation, reduced financing upon IPO, and lost profits on sales that they would have made but for the TRO and the injunction. And that is what, it's not just some formal pleading. That's what happened here. The FDA approved the sale of Amphistar's enoxaparin. They started selling. We filed a patent infringement action. We sought a TRO and a preliminary injunction. The court granted the TRO and the preliminary injunction. That stopped the sales. All of this is alleged. Eventually, the injunction was lifted three and a half months later. The sales resumed. The only damages alleged in this case, and the only damages that can be proved ever based upon the allegations of this complaint, are that they couldn't sell during a defined period of time as a result of an order of the court. Mr. Frank, you say you're not going to defend the district court's decision, but the district court does seem to make a point that you're making. It does point out that if the complaint had linked the antitrust injuries to the collaboration agreement and proceedings with the standard setting agency, this would be a very different case. And that seems to be what you're saying. That's fair. I answered Judge Lynch's question too quickly. Let me say it slightly different. Here's what the district court said. It said the federal antitrust claims in the amending complaint identify the antitrust injuries as the damaged reputation, reduced financing of the IPO, and lost profits on sales. It suffered as a result of the injunction in the patent infringement case which precluded it from selling generic enoxaparin. The amending complaint identifies no other basis of injury with respect to the federal antitrust claim. That we certainly do endorse, and that is absolutely correct. What the judge also said was that the preclusive act was the act of the FDA. In fairness, we didn't petition the FDA, and therefore, Moore-Pennington doesn't apply to what the FDA did. It applies to what the court itself did. So at that level, I'm not arguing that the district court was right. At the level of what the judge identified as the actual sole allegation of the complaint, it is absolutely correct that the judge is correct. As a conceptual matter, under Pennington in particular, and under this court's decision in Sandy River, if there were some independent harm, independent of the court's order, if there was some independent harm from the prior action as a conceptual matter, that would be something that could constitute an antitrust violation conceptually. But that is not what is alleged, and that is not what can be alleged. Excuse me, how long between the FDA adoption of this standard and your filing the lawsuit against them for patent infringement? I'm going to rephrase your question. The FDA never, never adopted this standard. All right. Can we move beyond that? Would you answer my question? They were delayed in entry to the market, and that is a form of damages which took its most visible fruition once you filed the lawsuit. I'm trying to figure out the time frame. Oh, I'm sorry. The precise time frames are that the FDA approved their application to sell on September, I think, 19, 2011. We filed an action two days later. The injunction was entered three or four weeks later. Sales occurred during the three- or four-week period. Then they stopped because of the injunction. Then the injunction was eventually lifted, and they resumed. So any lost sales over a two-day period would be de minimis?  When the injunction was entered, there were no sales and, therefore, lost sales. And sales resumed, and they were... Now, if I may, I'd like to address... Before you go there, could you address Premier Electrical? Because it seems to me that what you're arguing for flies in the face of the rationale, at least of that case. That is, that you may be conflating antitrust liability with damages flowing from antitrust injury. I respectfully suggest that the... What Bennington says is that government... That there is no right to recover based upon an act of government that results from petitioning, even if that act is part of a larger alleged conspiracy to violate the antitrust laws, even if there are other bad acts. And that is what this court did in Sandy River. And that is the controlling precedent, I say respectfully. But if I may, I'd like to address three factual premises for the assumptions that underlie your question and Judge Lynch's question. Factual premise number one is that the USP, the United States Pharmacopeia, did two things here, and they are different. One of the things that the USP did is that it is responsible for defining what are the structural characteristics of an oxyparin, the drug in question here. And insofar as it does that, it is setting a standard, and it is a standard-setting organization. That's not what this case is about. This case is about a procedure to determine in a manufacturing process whether or not the oxyparin that's produced by that process has a particular structural characteristic. The particular structure of it doesn't matter right now what that characteristic is. But what the USP did was it adopted a permissive method. That is, it is a method that can be used but need not be used. And furthermore, the FDA, it is flatly and demonstrably false that the FDA requires the use of that method. So in this context... I'm sorry. That's a factual dispute. The district court never got there. You certainly are not going to ask us to resolve a disputed issue of fact, as to which you may think you have evidence, but it's not the role of this court. With respect, Your Honor, first, the allegations of the complaint must be plausible, and second, they cannot be inconsistent with what the FDA itself says. Permit me, if I may. I want to submit you, but I think you're on thin ice when you are making these sorts of arguments to us. If I... Go ahead. Thank you. This precise question came up in the Penn case in arguments before the Federal Circuit, and Anfistar conceded that the FDA does not require the use of this procedure. This is Judge Moore, and this is the full colloquy set forth in the beginning at page 99 of the record appendix, 99-103. The same assertion was made, and Judge Moore said, But wait, the FDA doesn't require you to use their patented practice. The record is now clear that this is not the only way of doing it. Quoting Judge Moore still, You stood here and argued in response to Judge Dyke's question that you are required to perform this process by the FDA. No, you are not. I want a clear yes or no. Are you required to perform the patented process by the FDA, or are you required to determine whether or not it has a relevant structural characteristic? Answer, it is the latter. And that is how Anfistar satisfies the... uses the official USP test. Judge Moore, let me go back to my question one more time. Are you required to perform the patented process by the FDA? Answer, no. I share Judge Lynch's... Why does this help? I mean, the way your opponent has argued is a factual dispute. He's saying that treating this as somehow not a lock... in effect a lockout provision that is meaningless for all the reasons he described. That strikes me as a factual question. How can we get into that in a useful way in trying to analyze the issues here? The question... the only question is whether there was anti-competitive act. One of the questions... I'm not concerned so much with the ultimate outcome of this case, but with the district court's dismissal of the case on the pleadings, there may be an issue about what is actually alleged in the complaint. But the FTC has basically said we cannot allow the law to be, if you will, tort by an erroneous district court decision, and therefore we need to reverse that. And these other issues may come up in the future. If I may, there is a question that gets back to our concerns, and it's where I started, which is that the FTC seems to allow for some sort of indirect petitioning to the government when there is absolutely no direct petition. And we've asked why that aspect of the FTC brief is there. When is indirect petitioning... how would it be defined? The indirect petitioning idea comes from a Canadian Supreme Court case called Allied Tube. In Allied Tube, the court said... did two things. It said, one, if there is monkey business before a standard-setting organization, damages resulting from that may be recovered. If, in addition or separately, there are damages that result from government action that was the result of the monkey business, damages as to that may not be recovered. He hasn't alleged that. I beg your pardon? As I understand the damages claim made in this case, it is not because of the FDA action, but because of your client's actions to influence the standard-setting organization. Your Honor, I'll say two things in response to that. First, what is alleged in the complaint is alleged in the complaint. And with respect, I have read that to you, and it is all a function of the injunction. Second, there is no allegation in the complaint that Momota... It may be the injunction, but you were quoting to me language that had to do with damages flowing from the regulatory agency's adoption of a standard. The injunction is a different matter. I respectfully believe that I was reading to you language that indicated that the damages flowed exclusively from the injunction. If I may, the complaint... I'm running to other points before I run out of time. You're going to have a little extra time because we gave the other side a little time. First point, the complaint does not allege that Momota sponsored, supported, agreed to the voluntary test adopted. What Momota said to the USP is in the record, and it is not disputed. Momota opposed the adoption of the test, asserted that it was inaccurate and biased, and argued that it should not be adopted, and if adopted, it should not be mandatory. So this is different from the cases in which people joined in setting a standard, and what happened is not a standard because Momota succeeded in causing the USP to adopt this as a voluntary test. Further, next, there is no allegation in the complaint that what the USP did was causally linked to emphasizing coercion of this procedure in its application, in its abbreviated new drug application. Counsel, are there... in the briefs, in describing the misconduct before the standard setting body was that you, Momota, had a representative there who was aware of a pending patent application which would have the effect of, because of the interrelationship between that patent, which I guess can lead to the 207 method, would have the effect of locking in anyone seeking to enter this field as a generic drug to the use of that method and that patent. They allege that in their complaint, do they not? They allege that in their complaint, but what they do not allege was that the USP at that time had any requirement, what the USP requirement was, as alleged in the complaint, paragraph 40, was that one should not use his position as a member of one of these panels to benefit one's own interest or the interest of his or her company. Momota argued against, it is undisputed that Momota argued against adopting this standard, that it argued that it should be voluntary and that it thereby, if anything, devalued the propulsive effect of its patent rather than the other. And if I may add, these patents aren't secret, Your Honor. This patent was published, the application for this patent was published in 2003, five years before the stuff started, before the USP. The patent issued several months before the standard was adopted. These are all people in the industry. It is not a plausible assumption from the allegations of the complaint that the people, the competitors who participate in this panel have no idea what's going on. And furthermore, there is no allegation in the complaint that because the USP adopted this voluntary test, therefore Amphistar put it into its application. When the USP, they filed their application five years before these events occurred. They prosecuted their application for five years. There is no plausible link. I get the signal. Thank you very much.